UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

JEREMY DANIEL GROSECLOSE,

Defendant.

Case No. 21-cr-311 (CRC)

## OPINION AND ORDER

Defendant Jeremy Daniel Groseclose was among those who descended on the United States Capitol on January 6, 2021, while a Joint Session of Congress met to certify the results of the 2020 presidential election. Groseclose has been charged with six counts stemming from his conduct that day, including felony charges of civil disorder in violation of 18 U.S.C. § 231(a)(3) and obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2). The remaining charges are misdemeanors. Groseclose filed separate motions to dismiss each of the felony counts. The Court will deny the motions.

### I.   Background

This case is one of many arising out of the events at the United States Capitol on January 6, 2021, so the events of that day are well known. The Court draws much of this background from the criminal complaint. United States v. Ballestas, 795 F.3d 138, 148–49 (D.C. Cir. 2015). The Court recognizes that Groseclose may contest many of the facts in the complaint, which the Court takes as true at this stage. As a brief recap, the Joint Session of Congress convened at approximately 1:00 p.m. on January 6, 2021 to certify the vote count of the Electoral College of the 2020 Presidential Election. Criminal Complaint at 1, ECF No. 1. At approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Id. As the proceedings were underway, a crowd had gathered outside the Capitol. Shortly after 2:00

p.m., individuals in the crowd advanced up the exterior façade of the building and forced entry into the Capitol.  Id.  Members of Congress and Vice President Mike Pence were evacuated at 2:20 p.m., and the joint session of Congress was suspended.  It resumed shortly after 8:00 p.m. that evening.  Id.

Groseclose entered the Capitol building at approximately 2:24 p.m. through a broken window next to the Senate Wing Door.  He remained in the building for roughly 40 minutes. During that time, Groseclose descended into the Capitol Crypt, and, along with other rioters, pursued Capitol Police officers and attempted to prevent the officers from closing a nearby door on the east side of the Crypt.  Id. at 4–5.  He exited the building at approximately 3:04 p.m.

On February 22, 2021, Groseclose was charged by complaint for his actions on January 6, 2021.  On April 21, 2021, the grand jury returned an indictment charging several offenses based on the same conduct.  Following a superseding indictment, Groseclose now stands charged with civil disorder, in violation of 18 U.S.C. § 231(a)(3) (Count One); obstruction of an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count Two); entering and remaining in a restricted building or ground, in violation of 18 U.S.C. § 1752(a)(1) (Count Three); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Four); disorderly conduct in a Capitol building, in violation of 40 U.S.C. 5104(e)(2)(D) (Count Five); and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. 5104(e)(2)(G) (Count Six).  See Superseding Indictment, ECF No. 25. Groseclose moves to dismiss Counts One and Two of the Indictment.  The government opposes the motions, which are now ripe for the Court's review.

## II.   Legal Standards

A criminal defendant "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1).  Pretrial motions may challenge "a defect in the indictment," including "lack of specificity" and "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(iii), (v).  Because pretrial dismissal of an indictment "'directly encroaches upon the fundamental role of the grand jury,' dismissal is granted only in unusual circumstances." Ballestas, 795 F.3d at 148 (citation omitted).  "The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed." United States v. Sanford, Ltd., 859 F. Supp. 2d 102, 107 (D.D.C. 2012).

## III.   Analysis

The defendant moves to dismiss Count One, violation of 18 U.S.C. § 231(a)(3), and Count Two, violation of 18 U.S.C. § 1512(c)(2).  Almost all of the legal challenges the defendant raises in his motions have been considered and nearly uniformly rejected by other courts in this district. The Court joins in that heavy consensus as to both counts.

### A.  Civil Disorder - 18 U.S.C. § 231(a)(3)

Count One of the Superseding Indictment charges Groseclose with acting "to obstruct, impede, and interfere with a law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructed, delayed, or adversely affected commerce and the movement of any article or commodity in commerce and performance of any federally protected function." Superseding Indictment at 1, ECF No. 25; see 18 U.S.C. § 231(a)(3).

3

Groseclose contends that § 231(a)(3) exceeds Congress's Commerce Clause power, that the government as failed to allege a "federally protected function" that was adversely affected by the civil disorder under § 231(a)(3)'s second clause, and that the statute is unconstitutionally vague.  None of these arguments succeed.

### 1.  *Commerce Clause*

The Commerce Clause gives Congress the "[p]ower ... [t]o regulate Commerce ... among the several States."  U.S. Const. art. I, § 8, cl. 3.  This clause "must be read carefully to avoid creating a general federal authority akin to the police power," Nat'l Fed'n of Indep. Bus. v. Sebelius, 567 U.S. 519, 536 (2012).  The term "commerce" as used in § 231 is further defined by statute as "commerce (A) between any State or the District of Columbia and any place outside thereof; (B) between points within any State or the District of Columbia, but through any place outside thereof; or (C) wholly within the District of Columbia."  18 U.S.C. § 232(2).

Groseclose primarily argues that § 231(a)(3) exceeds Congress's Commerce Clause authority because the activities it regulates do not "substantially affect" interstate commerce.  Count One Mot. at 6–11.  According to Groseclose, the statute falls outside "the outer limit" of Congress's authority under the Commerce Clause.  Id. at 7 (quoting United States v. Lopez, 514 U.S. 549, 559 (1995)); see also United States v. Morrison, 529 U.S. 598, 613–19 (2000) (invalidating the Violence Against Women Act as outside Congress's Commerce Clause authority).

This argument has been considered and rejected in this district because § 231(a)(3) contains the kind of express jurisdictional element that prior courts have routinely held satisfies the Commerce Clause.  See United States v. Mostofsky, 579 F. Supp. 3d 9, 16–17 (D.D.C. 2021); see also, e.g., United States v. Phomma, 561 F. Supp. 3d 1059, 1064–66 (D. Or. 2021).

For example, the Supreme Court has consistently upheld statutes that contain an express jurisdictional clause that ties the prohibited conduct to interstate commerce.  See United States v. Bass, 404 U.S. 336 (1971) (felon-in-possession statute with jurisdictional requirement that the possession be "in commerce or affecting commerce" upheld); Scarborough v. United States, 431 U.S. 563 (1977) (same).  Even after Lopez and Morrison, Courts have determined that an express jurisdictional element is "typically enough to satisfy the Commerce Clause."  579 F. Supp. 3d at 16; see also id. at 17 ("[E]very circuit—including ours—has held after Lopez that a jurisdictional element 'substantially identical' to the one in Bass and Scarborough satisfies the Commerce Clause."); Fraternal Order of Police v. United States, 173 F.3d 898, 907–08 & n.2 (D.C. Cir. 1999) (collecting cases).

Section 231(a)(3) contains the necessary jurisdictional element.  It requires that the "civil disorder" be one that "in any way or degree obstructs, delays or adversely affects commerce."  18 U.S.C. § 231(a)(3).  This jurisdictional element is "substantially identical" to the one in Bass and Scarborough.  Mostofsky, 579 F. Supp. 3d at 17.  The Court finds the reasoning of Mostofsky persuasive and concurs that § 231(a)(3) does not exceed Congress's Commerce Clause power.  See also, e.g., United States v. Howard, No. 21-CR-28-PP, 2021 WL 3856290, at *11 (E.D. Wis. Aug. 30, 2021) (declining to dismiss § 231(a)(3) charge under the Commerce Clause).

Groseclose's additional arguments—that the relationship between § 231(a)(3) and interstate commerce is too attenuated, that the jurisdictional element of § 231(a)(3) is faulty, and that the statute regulates non-economic activity—have also been rejected in this district.  See Mostofsky, 579 F. Supp. 3d at 18–19 (rejecting argument that § 231(a)(3)'s jurisdictional element is "faulty by creating too attenuated a connection with interstate commerce"); id. at 19

("Mostofsky does not prevail on his argument that the jurisdictional element is insufficient as it 'does not require a <u>substantial</u> effect on interstate commerce' . . . ." (emphasis in original)).

This Court rejects these arguments as well.  First, "[a] statute may be upheld when it contains an element that requires that 'the conduct criminalized must affect or attempt to affect commerce <u>in some way or degree</u>.'"  <u>Id.</u> (emphasis in original) (quoting <u>Taylor v. United States</u>, 579 U.S. 301, 308 (2016)).  Similarly worded jurisdictional elements in other statutes have been upheld under the Commerce Clause.  <u>See id.</u> ("[T]he Hobbs Act jurisdictional element . . . regulates 'whoever <u>in any way or degree</u> obstructs, delays or affects commerce.'" (emphasis in original) (quoting 18 U.S.C. § 1951(a))).

Second, "Congress may proscribe violent conduct when such conduct interferes with or otherwise affects commerce over which Congress has jurisdiction."  <u>United States v. Hill</u>, 927 F.3d 188, 199 (4th Cir. 2019).  Groseclose's conduct need not be commercial to violate the statute, so long as it interferes with or affects interstate commerce.  <u>See</u> <u>Mostofsky</u>, 579 F. Supp. 3d at 20 (statute which "'proscribe[s] conduct interfering with or affecting interstate commerce' in the form of . . . disrupting efforts to contain a civil disorder that affects interstate commerce" is a valid exercise of Congress's commerce clause authority (quoting <u>Hill</u>, 927 F.3d at 206)).

Finally, courts that have recently upheld § 231(a)(3) as valid under the Commerce Clause have done so solely based on the jurisdictional element.  Therefore, Groseclose is mistaken that § 231(a)(3) is invalid because Congress did not make any specific findings that that activity regulated by § 231(a)(3) affects interstate commerce.  "<u>Lopez</u>'s fundamental proposition is that Congress must ensure that its Commerce Clause power to regulate non-commercial activities extends to only those activities that substantially affect interstate commerce.  Congress may do so either through its own legislative findings or by including a jurisdictional element in the

statute; *it need not do both*."  Terry v. Reno, 101 F.3d 1412, 1418 (D.C. Cir. 1996) (emphasis added).

### 2.  *Federally Protected Function*

Section 231(a)(3) covers interference with a law enforcement officer's duty during a civil disorder that "in any way or degree obstructs, delays, or adversely affects" not only interstate commerce, but also the "performance of any federally protected function."  18 U.S.C. § 231(a)(3).  "Federally protected function" is defined as "any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof."  Id. § 232(3).  Groseclose contends that "department" or "agency" as defined in the statute is limited to *executive* departments or agencies, and therefore Congress's certification of the election does not qualify.  Count One Mot. at 4–5; see 18 U.S.C. § 6.

This argument misses the mark too.  First, the language of the indictment, which closely mirrors the statute, is sufficient to allege a federally protected function.  See United States v. Sargent, No. 21-CR-00258 (TFH), 2022 WL 1124817, at *3 (D.D.C. Apr. 14, 2022) ("As the D.C. Circuit has held, '[t]he validity of alleging the elements of an offense in the language of the statute is, of course, well established.'" (alteration in original) (quoting United States v. Haldeman, 559 F.2d 31, 123 (D.C. Cir. 1976))).  The indictment need not specify *which* federally protected function was allegedly obstructed or delayed, only that *a* federally protected function was obstructed or delayed.  Id. at 4.

Furthermore, the superseding indictment does not specify that the alleged federally protected function was Congress's certification of the election; as the government points out, several other possible federal functions were impeded on January 6, 2021, including the work of

the Capitol Police and Secret Service.  Opp'n to Mot. to Dismiss Count One at 10, 15–16.  The

government could proceed on either theory of the case at trial—its failure to identify which of

the above federally protected functions the government intends to pursue is not grounds to

dismiss Count One at this stage.  See Sargent, 2022 WL 1124817, at *5 (bare bones indictment

containing "only language closely mirroring 18 U.S.C. § 231(a)(1)" sufficient); United States v.

Phomma, 561 F. Supp. 3d 1059, 1063, 1070 (D. Or. 2021) (same); see also United States v.

Williamson, 903 F.3d 124, 131 (D.C. Cir. 2018) (for statute proscribing making a threat against a

federal law enforcement officer "on account of the performance of [his] official duties,"

indictment need not draw attention to a particular official duty to be sufficient).

### 3.  Additional Constitutional Challenges

Groseclose raises two additional constitutional challenges to § 231(a)(3).  First, he

contends that several of the terms in the statute, such as "any act" and "incident to and during the

commission of a civil disorder" fail to provide fair notice of what conduct is prohibited.  Count

One Mot. at 14–15.  Second, he argues § 231(a)(3) is unconstitutionally overbroad because of its

deterrent effect on free speech.  Id. at 16–23.  As with his other arguments, most of these claims

have been rejected by other courts in this district.  The Court takes each in turn.

The "'void for vagueness' doctrine prevents the enforcement of a criminal statute that is

'so vague that it fails to give ordinary people fair notice of the conduct it punishes' or is 'so

standardless that it invites arbitrary enforcement.'"  United States v. Nordean, 579 F. Supp. 3d

28, 46–47 (D.D.C. 2021) (quoting Johnson v. United States, 576 U.S. 591, 595 (2015)).  A

statute is not impermissibly vague merely because a reasonable jurist might disagree on where to

draw the line between lawful and unlawful conduct in particular circumstances.  Skilling v.

United States, 561 U.S. 358, 403 (2010).  Rather, a statute is impermissibly vague only if it

requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and

"wholly subjective" application.  United States v. Williams, 553 U.S. 285, 306 (2008).

Examples of such indeterminate phrases include "annoying," Coates v. City of Cincinnati, 402

U.S. 611, 615–16 (1971), "unjust or unreasonable," United States v. L. Cohen Grocery Co., 255

U.S. 81, 86 (1921), or "indecent," Williams, 553 U.S. at 306, as the meaning of such terms may

depend "on the subjective reaction of others," Count One Mot. at 15.

  The terms in § 231(a)(3) are not so vague.  Section 231(a)(3) prohibits any "act" done "to

obstruct, impede, or interfere" with law enforcement responding to a "civil disorder." 18 U.S.C.

§ 231(a)(3).  These terms do not depend on the subjective reaction of others—"[i]ndeed, there

are specific fact-based ways to determine whether a defendant's conduct interferes with or

impedes others, or if a law enforcement officer is performing his official duties incident to and

during a civil disorder."  Nordean, 579 F. Supp. 3d at 57 (internal quotation marks omitted).

Accordingly, the statute does not carry the potential for arbitrary enforcement.  See id. ("Section

231(a)(3) does not carry the potential for misunderstanding or arbitrary enforcement like the

statutes in the cases Defendants cite."); see also United States v. Fischer, No. 1:21-CR-00234

(CJN), 2022 WL 782413, at *3 (D.D.C. Mar. 15, 2022) (holding the terms of § 231(a)(3) "do not

carry the potential for misunderstanding or make the statute 'so standardless that it invites

arbitrary enforcement'" (quoting Johnson v. United States, 576 U.S. 591, 595 (2015))); United

States v. McHugh, No. 21-453 (JDB), 2022 WL 296304 at *16 (D.D.C. Feb. 1, 2022) (holding

same).

  Groseclose also claims § 231(a)(3) is unconstitutionally overbroad, arguing it burdens

protected speech under the First Amendment.

The vagueness doctrine differs from the overbreadth doctrine in that "[a] vague law denies due process by imposing standards of conduct so indeterminate that it is impossible to ascertain just what will result in sanctions; in contrast, a law that is overbroad may be perfectly clear but impermissibly purport to penalize protected First Amendment activity." Hastings v. Jud. Conf. of the U.S., 829 F.2d 91, 105 (D.C. Cir. 1987).  In the First Amendment context, "a litigant will succeed on an overbreadth challenge 'if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" Fischer, 2022 WL 782413, at *3 (quoting Americans for Prosperity Found. v. Bonta, 141 S. Ct. 2373, 2387 (2021)).

Section 231(a)(3) is not unconstitutionally overbroad because "the statute's potentially unconstitutional applications are few compared to its legitimate ones." Mostofsky, 579 F. Supp. 3d at 22.  Most notably, § 231(a)(3) refers to "'any act to obstruct, impede, or interfere with any fireman or law enforcement officer,' . . . which most courts have read not to include speech." Id. (emphasis omitted) (collecting cases).   The text of the statute therefore covers "primarily, if not exclusively, conduct or unprotected speech, such as threats." Fischer, 2022 WL 782413, at *4 (citation omitted).  As other courts in this district have noted, it should therefore "come as no surprise" that judges have rejected overbreadth challenges lodged against § 231(a)(3). Id.; see also, e.g., McHugh, 2022 WL 296304 at *17; Nordean, 579 F. Supp. 3d at 56–58; Mostofsky, 579 F. Supp. 3d at 22–24; Howard, 2021 WL 3856290, at *11–12; United States v. Wood, No. 20-cv-56 (MN), 2021 WL 3048448, at *8 (D. Del. July 20, 2021).  This Court follows suit.

  B.  Obstruction of an Official Proceeding – 18 U.S.C. § 1512(c)(2)

Count Two of the Superseding Indictment alleges that Groseclose "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the

Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15–18," in

violation of 18 U.S.C. §§ 1512(c)(2) and 2.  Superseding Indictment at 2.  Section 1512 provides

in relevant part that:

> (c) Whoever corruptly—
>
>> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with intent to impair the object's integrity or availability for use in an official proceeding; or
>>
>> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c).

Groseclose moves to dismiss Count Two on a plethora of grounds.  He contends that the

congressional proceeding to certify the Electoral College vote is not an "official proceeding"

within the meaning of § 1512(c).  Count Two Mot. at 7–11 & n.2, 30–38.  He maintains that his

conduct at the Capitol on January 6th does not fall within § 1512(c)(2)'s definition of "obstruct[],

influence[], or impede[]," which, he says, covers only "action with respect to a document, record

or other object."  Id. at 2, 11–12, 24–30.   And, he argues that both the term "corruptly" and

"official proceeding" are unconstitutionally vague, and that the statute, as applied to him,

violates the First Amendment.  Id. at 10–23.

The Court has already considered § 1512(c) charges in connection with the January 6th

riot at some length, and it adopts the reasoning of its prior decisions.  See United States v.

Robertson (Robertson I), No. 21-CR-34 (CRC), 2022 WL 969546 (D.D.C. Feb. 25, 2022);

United States v. Robertson (Robertson II), No. 21-CR-34 (CRC), 2022 WL 2438546 (D.D.C.

July 5, 2022); see also Opinion and Order, United States v. Strand, No. 21-cr-85 (CRC) (D.D.C.

Aug. 17, 2022), ECF No. 88. Accordingly, the Court will address Groseclose's arguments only briefly.

### 1. Official Proceeding

The certification of the Electoral College vote is an official proceeding for the purposes of § 1512(c). As the Court explained in a prior opinion, Robertson I, 2022 WL 969546, the statute's definition of "official proceeding" expressly includes "a proceeding before the Congress." Id. at *3 (quoting 18 U.S.C. § 1515(a)(1)(B)). Moreover, the certification of the Electoral College has all the hallmarks of an official proceeding: The Constitution mandates that it occur, the Electoral Count Act details formal procedures to follow, and the results are documented in the Congressional Record. Id. at *4 (citing U.S. Const. art. II, § 1, cl. 3; then citing U.S. Const. amend. XII; then citing 3 U.S.C. §§ 15–18; and then citing 167 Cong. Rec. H75, S13 (daily ed. Jan. 6, 2021) (House and Senate Sections)); see also United States v. Grider, No. 21-cr-22 (CKK), 2022 WL 392307, at *4 (D.D.C. Feb. 9, 2022) ("Few Congressional events could be more ceremonious and formal than the quadrennial Joint Session of Congress mandated by the Constitution and federal statute."). The vote count is plainly an official proceeding.

Groseclose additionally argues that Congress's certification was not an official proceeding because it lacked an adjudicatory function. Count Two Mot. at 30–32. This argument fares no better, as several courts in this district have rejected virtually identical arguments. See, e.g., McHugh, 2022 WL 296304, at *8 (an "adjudicative gloss" on the definition of an official proceeding "is not just absent from the text; it is inconsistent with it" (emphasis in original)); United States v. Bozell, No. 21-CR-216 (JDB), 2022 WL 474144, at *4

(D.D.C. Feb. 16, 2022) (rejecting the "argument that § 1512(c)(2)'s use of 'official proceeding' refers only to ceremonies that involve adjudication or investigation").

Regardless, even if an "official proceeding" before Congress must be adjudicatory in nature, "the Certification of the Electoral College vote so qualifies."  United States v. Caldwell, 581 F. Supp. 3d 1, 14 (D.D.C. 2021).  As explained in Caldwell, "disputes can arise during the Certification," and "Members of Congress can object to the votes in writing."  Id. at 15.  "Each chamber then 'withdraw[s]' to consider and make a 'decision' as to the objection.  Id. (alteration in original) (quoting 3 U.S.C. § 15).  Finally, the "joint meeting of Congress cannot be 'dissolved until the count of electoral votes shall be completed and the result declared.'"  Id. (quoting 3 U.S.C. § 16).  To the extent some kind of "adjudicatory" function is required, the Certification of the Electoral College vote has one.

### 2.  Record or Document

Groseclose also asserts that § 1512(c)(2) only covers conduct "with respect to a document, record or other object," and so his charged conduct on January 6th does not fall within the statute's ambit.  Count Two Mot. at 1–4, 24–30.

For support, Groseclose relies primarily on the reasoning in United States v. Miller, in which Judge Nichols dismissed an analogous obstruction charge for failure to state a claim based on this limited reading of § 1512(c)(2).  Count Two Mot. at 2–4; see No. 21-cr-119 (CJN), 2022 WL 823070 (D.D.C. Mar. 7, 2022), reconsideration denied, 2022 WL 1718984 (D.D.C. May 27, 2022).  Every other judge in this district to consider the question has rejected this limiting construction of § 1512(c)(2), both before and after Judge Nichols's ruling.  See, e.g., United States v. Bingert, No. 21-cr-91 (RCL), 2022 WL 1659163, at *7–11 (D.D.C. May 25, 2022); United States v. Reffitt, No. 21-cr-32 (DLF), 2022 WL 1404247, at *7–10 (D.D.C. May 4,

2022); <u>United States v. McHugh</u>, No. 21-cr-453 (JDB), 2022 WL 1302880, at *4–12 (D.D.C. May 2, 2022); <u>United States v. Puma</u>, No. 21-cr-454 (PLF), 2022 WL 823079, at *12–13 (D.D.C. Mar. 19, 2022); <u>United States v. Montgomery</u>, 578 F. Supp. 3d 54, 69–79 (D.D.C. 2021).  This Court has also weighed in before, and it likewise concluded that "the statute's plain meaning 'cover[s] more than just acts affecting evidence.'"  <u>Robertson II</u>, 2022 WL 2438546, at *3 (alteration in original) (quoting <u>Reffitt</u>, 2022 WL 1404247, at *7); <u>see also</u> <u>Strand</u>, No. 21-cr-85 (CRC), ECF No. 88 at *7 (concluding that "an indictment on [§ 1512(c)(2)] need not allege that a defendant took an action with respect to a document, record, or other object").  The Court adopts in full its reasoning in the <u>Robertson II</u> opinion, and will therefore deny Groseclose's motion to dismiss on those grounds.

   *3.  Vagueness*

   Finally, Groseclose contends that the terms of § 1512(c)(2) are unconstitutionally vague and that applying § 1512(c)(2) to his conduct would constitute a novel construction of the statute. Count Two Mot. at 11–23.  As with Count One, § 1512(c)(2) does not "leav[e] people in the dark about what the law demands."  <u>Id.</u> at 6 (alteration in original) (quoting <u>Sessions v. Dimaya</u>, 138 S. Ct. 1204, 1224 (2018) (Gorsuch, J., concurring in part and concurring in the judgment)).  As with Groseclose's other arguments, this Court has considered many of the same arguments and concluded that § 1512(c)(2) is not unconstitutionally vague, either by its terms or in its application to the events of January 6.  <u>See</u> <u>Robertson I</u>, 2022 WL 969546, at *6 (finding that the exercise of prosecutorial discretion in the government's charging decisions related to January 6 does not raise any vagueness concerns); <u>see also</u> <u>id.</u> (holding that the term "corruptly" as used in § 1512(c) and § 1512(b) is neither void for vagueness nor vague as applied); <u>Mostofsky</u>, 579 F. Supp. 3d at 26 ("reject[ing] the notion that" applying § 1512(c)(2) to the defendant's conduct "is

14

so 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue'" (quoting Bouie v. City of Columbia, 378 U.S. 347, 354 (1964)); Nordean, 579 F. Supp. 3d at 52 (same).

The Court also rejects Groseclose's argument that the Court should employ a more stringent vagueness test under the First Amendment because otherwise, the application of § 1512(c)(2) to him would amount to criminalization of his participation in a political protest. Count Two Mot. at 23–24.  As this Court found previously, "[s]ection 1512(c)(2) . . . targets only corrupt acts of obstructing, influencing, or impeding an official proceeding, so it does not proscribe lawful or constitutionally protected speech."  Robertson I, 2022 WL 969546, at *6 (internal quotation marks omitted) (citing Caldwell, 581 F. Supp. 3d at 34).  As with other January 6 defendants, the conduct for which Groseclose is charged—entering the Capitol Building and "forcing open a doorway that police officers were trying to close," Opp'n to Mot. to Dismiss Count Two at 43—is not speech that is protected by the First Amendment.  See Nordean, 579 F. Supp. 3d at 53 ("No matter Defendants political motivations or any political message they wished to express, this alleged conduct is simply not protected by the First Amendment.").

**IV.   Conclusion**

For the foregoing reasons, it is hereby

**ORDERED** that [36] Defendant's Motion to Dismiss Count One is DENIED.  It is

further

**ORDERED** that [37] Defendant's Amended Motion to Dismiss Count Two is DENIED.

**SO ORDERED**.


_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>September 13, 2022</u>

16