UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 1:21-cr-00311-CRC |
| v. | : | |
| | : | |
| JEREMY DANIEL GROSECLOSE, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' BRIEF REGARDING AUTHENTICITY OF AUDIO RECORDINGS IN OPEN SOURCE VIDEO EXHIBITS**

Pursuant to the Court's request on November 14, 2023, the government hereby provides briefing regarding the question of admissibility and authentication of the audio included in the government's exhibits drawn from open source and third-party sources. (Government Exhibits 146, 147, 148, 149, 150, 151, 152, 153, together "the Open Source Exhibits"). These videos and the audio included in them were obtained by the FBI from publicly available sources such as YouTube and Twitter, as well as video clips from publicly available archives, such as Internet Archive, and also video clips taken by cameras and cellphones carried by journalists and rioters. As set forth below, the government's witnesses have satisfied the low bar required for this Court, as the gatekeeper of admissible evidence, to make an initial ruling of authenticity to admit the audio, and to then allow the Court, as the fact finder, to make a final determination whether the admitted audio is authentic and how much weight to give it.

**ARGUMENT**

Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b) provides a non-exhaustive list of examples of evidence that satisfies this requirement, including comparisons to authenticated

1

specimen, and examining the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." FRE 901(b)(3), (4).

Establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992); *see also United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, … and the proponent's burden of proof for authentication is slight[.]") (citation and quotation marks omitted).

Rule 901 "requires only a prima facie showing of genuineness" for the evidence to be admissible. *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997). Stated differently, "[t]he standard the district court must apply in evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017). After clearing that low hurdle, the evidence should *first* be admitted, to *subsequently* allow the fact finder to make the ultimate decisions regarding authenticity and probative value. *See Vidacak*, 553 F.3d at 349 ("The district court's role is to serve as gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic."); *United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("Once that *prima facie* case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury.").

To make out a *prima facie* showing of authenticity, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981). And, importantly, the party seeking to admit evidence need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994). Nor is government required to establish that the proffered evidence has not been altered or staged. *United States v. Broomfield*, 591 F. App'x 847, 852 (11th Cir. 2014) (finding sufficient evidence of authenticity even though "there was no testimony establishing that the recording equipment was reliable or that the video was not altered or staged").

Indeed, questions concerning possible alterations go to the weight the fact finder should give the evidence, not to its authenticity. *United States v. Safavian*, 435 F. Supp. 2d 36, 41 (D.D.C. 2006) (arguments that earlier emails included in an email chain may have been altered before being forwarded are "more appropriately directed to the weight the jury should give the evidence, not to its authenticity"). Absent a showing of bad faith or evidence tampering[1], "the government must only 'demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated.'" *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (quoting *United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)); *see also, e.g.*, *United States v. Bowens*, 938 F.3d 790, 794-95 (6th Cir. 2019) (explaining that while "[a]nyone *could have* used the defendants' Facebook accounts, just as the pictures *could have* depicted the men smoking tobacco cigars, and 'getting high' *could have* been a reference to skydiving," there was

---

[1] No witness has cast doubt that the audio recordings in the Open Source Exhibits have been tampered with, nor has the defendant provided any evidence showing bad faith or evidence tampering. To the contrary, all testimony to date reflects that the audio recordings in the Open Source Exhibits fairly and accurately reflect the noise that the witnesses heard in the Capitol Building on January 6, 2021.

3

sufficient circumstantial evidence "for the jury to infer that the accounts belonged to the defendants, and that the defendants were the authors of the posts [which were] about using marijuana" (emphasis added)).

In deciding preliminary questions about the admissibility of these videos, "[t]he court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a). In other words, the government may rely upon otherwise inadmissible evidence in establishing the authenticity of the video evidence described in this motion. *See, e.g.*, *United States v. White*, 116 F.3d 903, 914 (D.C. Cir. 1997).

### FRE 901(b)(3)[2] – Comparison with A Known Specimen

"Authentication by comparison is routine." *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1371 (Fed. Cir. 2021). For example, photos and videos of a scene can be authenticated by comparison with previously admitted exhibits that show the same scene from other angles. *See United States v. Hoyt*, 946 F.2d 127 (D.C. Cir. 1991) ("[W]e will assume without deciding that the photograph was sufficiently authenticated by comparison with previously admitted Government Exhibit 11, which showed the door from another angle."); *Diaz v. County of Ventura*, 512 F. Supp. 3d 1030, 1035 (C.D. Cal. 2021) ("Here, the videos can be authenticated through other evidence on the record—namely, other video and photographic evidence of the incident that Green provides.");

---

[2] This Court identified *United States v. Celis*, 608 F.3d 818 (D.C. Cir. 2010) and *United States v. White*, 116 F.3d 903 (D.C. Cir. 1997) as two cases providing guidance on this topic. However, both cases appear to have relied on two rules for authentication of the audio recordings—Rules 901(b)(1) and 901(b)(9)—that differ from the rules that the government relies upon here. Rule 901(b)(9), in particular, allows authentication by testimony about a process or system; like Rules 901(b)(3) and 901(b)(4), which the government relies on here, 901(b)(9) provides a path to authentication which does not depend on testimony of a witness with knowledge, as in Rule 901(b)(1). In other words, *Celis* and *White* support the conclusion that the government need not present a witness who has personal knowledge of the entirety of an audio recording, which is the defendant's primary argument against admissibility in this case.

*State v. Haight-Gyuro*, 186 P.3d 33, 38 (Ariz. Ct. App. 2008) (finding video sufficiently authenticated by comparison with separately authenticated photographs); 5 Weinstein's Federal Evidence § 901.03 ("When authentication of an item of evidence is accomplished by comparison with a specimen, the specimen itself must be proved to be authentic […] Nor does it matter what type of evidence the specimen consists of; the requirements for authenticating all types of specimens … are the same: prima facie proof that they are what their proponent claims them to be.").

In other January 6 trials in this district, the court found similar "open source" evidence to be authentic by comparison under Rule 901(b)(3). *United States v. Rodean*, 1:21-cr-57-TNM, Dkt. 50 (D.D.C. Apr. 20, 2022); *United States v. Seefried, et al.*, 1:21-cr-287-TNM, Dkt. 56 (D.D.C. May 20, 2022). In both *Rodean* and *Seefried*, the court compared screenshots of video from a known source (USCP CCTV), which showed the Senate Wing Doors from the inside facing out, with screenshots of video footage taken by an unspecified rioter showing the Senate Wing Doors from the outside looking in. *See, e.g.*, *Rodean*, Dkt. 50 at 2. The court noted similar objects depicted in both sets of screenshots: doors of a building flanked by windows, a crowd of rioters near the windows, and a wooden beam sticking through a shattered window. *Id.* The court found these similarities sufficient and granted the government's pretrial motion to find the video taken by the unspecified rioter to be authentic. *Id.* at 6.

Here, the Court has already ruled that the video recordings contained in the Open Source Exhibits in question are authentic based on comparison to previously admitted CCTV footage. The only question remaining is whether the audio recordings contained in those same Open Source Exhibits are also authentic. Just as this Court used comparisons between the CCTV footage and the Open Source Exhibits to authenticate the video recordings of the Open Source Exhibits, so too

can this Court use comparisons between the now-authenticated video recordings of the Open Source Exhibits and the audio recordings of those same exhibits to authenticate the audio recordings.

The Court may allow a witness to point out similarities between the authenticated and unauthenticated videos. See, e.g., United States v. Vázquez-Soto, 939 F.3d 365, 373 (1st Cir. 2019) (noting that government agent "pointed out Vázquez-Soto in each photograph and described his behavior"). Even without testimony comparing the authenticated video to the unauthenticated audio, such testimony should not be necessary to support the admissibility of the unauthenticated audio: as Rule 901(b)(3)'s language makes clear, the fact finder itself can compare the authentic video with the others. *See, e.g.*, *United States v. Bikundi*, 926 F.3d 761, 786-87 (D.C. Cir. 2019) ("Worse still, she claims, the jury heard no expert testimony at all about the handwriting. These arguments needlessly make the perfect the enemy of the good — the jury required no definitive identification or expert analysis to apply its own common sense.") (citing, inter alia, Rule 901(b)(3)).

This Court can determine authenticity based on comparisons between the authenticated video recordings and the audio recordings in the same Open Source Exhibits.

First, in Government's Exhibit 146, the video contains several moments that show that the audio reflects what is visually depicted. At 00:00 until 00:10, the video shows a woman in red using a red megaphone. At the same time, the audio reflects a woman's voice amplified above the sounds of the crowd, as would be expected in authentic and accurate audio.



In the same exhibit, from 00:30 until 00:40, the audio recording captures rioters chanting "USA!" and, at the same moments, the video reflects the same chant.



As the videographer of Exhibit 146 moves away from the Senate Wing Door and the tightly-packed crowd of people, the crowd noise on the audio recording gets softer, as expected because the videographer moves away from the crowd. These, taken together, show by comparison that the audio recording matches with the already-authenticated video recording of Ex. 146, and can therefore be authenticated itself.

In Exhibit 147, there are four specific moments where the video confirms that the audio recording is authentic.[3] First, from 00:08 until 00:09, the video depicts a rioter speaking, and the audio recording captures words that match the movement of his mouth.



In the same exhibit, from 00:19 until 00:20, the video reflects a woman shouting, and the audio recording captures a female voice saying, "we're home" over crowd noise. This also matches the movement of her mouth.

---

[3] Exhibit 147 includes overlay of a reporter's voice. The government does not offer that voiceover audio, only the audio of the crowd.



In the same exhibit, from 00:22 until 00:23, the video reflects rioters banging on broken windows panes and, at the same time, the audio recording reflects banging sounds consistent with the time and speed of the strikes, as well as the sound of hands striking glass.



Finally, at 00:29 until 00:30, the video shows rioters chanting, and, at the same time, the audio recording reflects chants of "USA!" which matches the movement of the rioter's mouths.



These moments, coupled with Lt. McCree's testimony that Exhibit 147 accurately captures the sound of the door alarm (addressed below), support the conclusion that the audio recording of Exhibit 147 is what it purports to be, namely, the audio associated with the visual recording of Exhibit 147.

In Exhibit 148, from 0:42 until 0:46, a rioter is seen yelling and, at the same time, the audio records a male voice saying, "do not stop pushing forward," which matches exactly with the movements of the rioter's mouth as shown in the authenticated video.



From 1:22 through 1:49, the video recording shows the perspective of the video leaving the hallway and entering an office. At the same time, the audio is significantly softer, with the sound of the crowd muted, as is consistent with the video recording reflecting that the recording device is no longer in the hallway with the crowd.



At 2:03 to 2:05, the video shows the person in the white hat, who recorded this video, chanting; the audio perfectly records a male voice chanting "USA!" at the exact same time.



At 4:30 until 4:34, the video reflects a male in a black jacket and ski mask speaking and, at the same time, the video reflects a male voice saying, "Ay, man, this is a party," consistent with the movement of the man's mouth in the video.



Finally, at 4:50 until 4:52, the same man can be seen spreading his arms out and speaking at the same time that the video records the same male voice saying, "Where's Nancy at?" consistent with the movement of his mouth.



In Exhibit 149, from 00:08 until 00:10, the video recording shows a chair thrown at police officers. At the same time, the audio recording reflects the sound of a chair hitting a wall and then the floor, consistent with the video recording at the same time.



Similarly, at 0:19 until 0:21, the video reflects another chair being thrown at police officers, and the audio reflects the sounds of a chair landing on the floor, consistent with what is shown in the video recording at the same time.



The audio also captures people exclaiming "Oh!" as chairs are thrown and, at 00:18 through 00:20, captures an unknown person shout "You're scared now, motherfucker!" Although the speakers cannot be seen on camera, here, this audio is consistent with the physical action captured by the video: rioters taunting police while throwing chairs at them.

In Exhibit 150, from 00:05 until 00:10, the video shows blood on the ground of the Capitol Building before panning up to rioters standing near the blood. At the same time, the audio reflects a male voice saying, "Is anyone hurt? There's blood on the ground," accurately and contemporaneously describing what is being portrayed in the video recording.



From 00:30 until 00:35, the video shows a woman speaking and, at the same time, the audio recording reflects a female voice saying, "Ay, fuck yeah." The movement of her mouth, as well as the mouths of the two men standing next to her, are consistent with what is reflected in the audio recording.



In Exhibit 152, at 00:21 until 00:28, the video focuses on a woman with dark hair and a red scarf carrying a microphone. The audio picks up a female voice speaking in French, consistent with the movements of the woman, and the French-language word on her microphone,[4] and consistent with her gesturing to move to a different location.

---

[4] Her microphone contains the word Quotidien, which means everyday, commonplace, or ordinary in French.



Finally, in Exhibit 153, from 00:50 until 01:02, a man in a gray sweatshirt can be seen speaking. At the same time, the audio reflects a male voice speaking consistent with the movement of the man's mouth.



At 01:20 until 01:24, several rioters are shown speaking and moving their hands to indicate to other rioters to move out of the way. At the same time, the audio reflects two men saying, "make a hole," consistent with the men's gestures and the movement of their mouths.

16



**FRE 901(b)(4) – Distinctive Characteristics and the Like**

The Court may also find that the testimony of Lieutenant. McCree, Officer Mencia, Officer Vanzego establishes the authenticity of the audio in the open source exhibits due to the "contents, substance, internal patterns, or other distinctive characteristics . . . taken together with all the circumstances." FRE 901(b)(4). Specifically, Lt. McCree and Ofc. Vanzego both testified that the door alarms, as heard in Exhibits 147, 148, 150, and 153 are the door alarms of the Capitol Building, and which both witnesses had heard on prior occasions and recognized. Both witnesses testified that these alarms were going off on January 6, 2021 for a lengthy amount of time after the Capitol Building was breached by the rioters; indeed, they were going off in the very same place where these videos were recorded, because the video portions of these exhibits—which have been authenticated—capture the physical breaches of, and damage too, these doors. Ofc. Mencia also testified that the taunts heard in Exhibit 149 are consistent with the taunts of the crowd that he

heard when he was in the same area at the same time that the video was being recorded. Lt. McCree also testified that Exhibit 151 was consistent with the state of the Rotunda on January 6, 2021.[5]

## CONCLUSION

In this case, each exhibit contains points at which the audio recording can be compared to the authenticated video recording. There has been no showing of bad faith or evidence tampering, and no reason—other than that these videos have come from unknown sources—to suspect that the audio within has been edited or modified. Accordingly, the government respectfully requests that this Court find the open source audio evidence included in the already-authenticated open source videos offered by the government to be authentic and admissible. Any questions about the audio goes to the weight of the evidence, not the admissibility of the audio itself.

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

By:    */s/ Carolyn J. Jackson*
       Carolyn J. Jackson
       D.C. Bar No. 1644971
       Assistant United States Attorney
       Capitol Siege Section

       */s/ Michael J. Romano*
       Michael J. Romano
       IL Bar No. 6293658
       Deputy Chief, Capitol Siege Section

       */s/ Anthony W. Mariano*
       Anthony W. Mariano
       MA Bar No. 688559
       Trial Attorney / Detailee
       Capitol Siege Section

---

[5] Exhibit 151 is a video taken from the Defendant's own Facebook page, and the government expects that its witness, Special Agent Matthew Lee, will testify that the voice in video is that of the Defendant, in accordance with FRE 901(b)(5), and the manner of retrieving the video and its source.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendant.

/s/ Carolyn Jackson
Carolyn J. Jackson
D.C. Bar No. 1644971
Assistant United States Attorney
601 D Street N.W.
Washington D.C. 20579
carolyn.jackson@usdoj.gov
(202) 252-7078