UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 1:21-cr-00311-CRC |
| v. : | |
| : | |
| JEREMY DANIEL GROSECLOSE, : | |
| : | |
| Defendant. : | |

**UNITED STATES' BRIEF REGARDING
18 U.S.C. § 1752 *MENS REA* REQUIREMENT**

Pursuant to the Court's minute order on November 21, 2023, and subsequent request for briefing, the government hereby provides briefing regarding the *mens rea* requirement for charges brought under 18 U.S.C § 1752.

**Background**

The defendant, Jeremy Groseclose, was tried on criminal charges arising from his participation in the riot on January 6, 2021, including two charges brought under 18 U.S.C. § 1752(a). Groseclose waived his right to a jury trial, opting instead for a bench trial in front of this Court. The trial took place from November 13, 2023, until November 16, 2023, with a partial verdict delivered on November 21, 2023. Before the scheduled verdict, this Court issued a minute order requesting that the parties "be prepared to address whether the 'knowingly' element of 18 U.S.C. §§ 1752(a)(1) and (a)(2) requires the Court to find that the Defendant knew both that the Capitol building and grounds were 'posted, cordoned off, or otherwise restricted' on January 6 and that former Vice President Pence was 'visiting' the Capitol." Minute Order, Nov. 21, 2023.

At the hearing on November 21, 2023, this Court, noting that it had raised the issue *sua sponte*, heard oral arguments on the matter. The Court requested that the parties provide briefing

1

on the issue and reserved the verdict on Counts Three and Four until such briefing was complete. Minute Order, Nov. 21, 2023.

## **Argument**

This Court has questioned whether the "knowingly" element of 18 U.S.C. §§ 1752(a)(1) and (a)(2) requires the Court to find that the Defendant knew that former Vice President Pence was "visiting" the Capitol. For the reasons articulated below, the statute does not require such a showing.

> A. <u>The statutory text does not require proof of the defendant's knowledge of the Secret Service's protectee's presence within the restricted perimeter.</u>

For ease of reference, the relevant text of 18 U.S.C. § 1752 is as follows:

(a) Whoever—
> (1) knowingly enters or remains in any restricted building or grounds without lawful authority to do so;
> (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;
> . . .
> or attempts or conspires to do so, shall be punished as provided in subsection (b).

. . .

(c) In this section—
> (1) the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area—
> > (A) of the White House or its grounds, or the Vice President's official residence or its grounds;
> > (B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or
> > (C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance; and
> 
> (2) the term "other person protected by the Secret Service" means any person whom the United States Secret Service is authorized to protect under section 3056 of this title or by Presidential memorandum, when such person has not declined such protection.

Subsection (a) of the statute defines five different offenses. Subsection (b) describes the penalties for committing these offenses and includes an enhancement where any of the offenses was committed with a deadly or dangerous weapon or firearm or whose conduct results in significant bodily injury. Finally, Subsection (c) defines certain terms used in Subsection (a) of the statute. The word "knowingly" only appears in subsection (a).

The "most natural grammatical reading" of the statute suggests that knowingly only modifies those terms in its immediate vicinity. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 68 (1994); *see also Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009) ("As a matter of ordinary English grammar, it seems natural to read the statute's word "knowingly" as applying to all the subsequently listed elements of the crime.") (holding that "knowingly" in the Aggravated Identify Theft statute, 18 U.S.C. 1028A(a), travels to the "another person" element contained within the same subsection of the statute[1]); *United States v. Cox*, 577 F.3d 833, 836 (7th Cir. 2009) (holding that "§ 2423(a) does not require that the Government prove that a defendant knew his victim was a minor. . . . [I]n our view the most natural reading of § 2423(a) is that the adverb 'knowingly' modifies only the verb 'transports' and does not extend to the victim's minor status. To adopt Cox's argument would mean that we would have to read the adverb 'knowingly' to modify not only the verb 'transports' but also the noun and the dependent clause. As the Fourth Circuit noted, this would be a grammatically absurd result.").

The grammar of the statute also supports reading "knowingly" to apply to the opening clause of Subsection (c)(1), but no farther. Where, as here, "the modifier 'knowingly' introduces

---

[1] The statute provides: "Whoever, during and in relation to any felony violation enumerated in subsection (c), *knowingly* transfers, possesses, or uses, without lawful authority, a means of identification *of another person* shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A(a)(1) (emphasis added).

a long statutory phrase, . . . questions may reasonably arise about how far into the statute the modifier extends." *Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019). In this case, the facts that constitute the offense, and that differentiate criminal conduct from innocent conduct, are that a defendant knew he was entering a restricted area and that he knew he lacked authority to do so. *See Bryan v. United States*, 524 U.S. 184, 193 (1998) (Unless "the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense."). In this way, § 1752(a)(1) resembles typical trespassing statutes.[2] *See* 3 Wayne R. LaFave, Substantive Criminal Law § 21.2(c) (3d ed. 2022) ("[T]he common requirement of criminal trespass offenses is that the actor be aware of the fact that he is making an unwarranted intrusion, which serves to exclude from criminal liability both the inadvertent trespasser and the trespasser who believes that he has received an express or implied permission to enter or remain.") (quotation marks omitted); *see generally Flores-Figueroa*, 556 U.S. at 652 ("[T]he inquiry into a sentence's meaning is a contextual one."). If the initial definition of "restricted building or grounds" from Subsection (c)(1) is inserted into Subsection (a)(1), that Subsection would read: "whoever—knowingly enters or remains in any [posted, cordoned off, or otherwise restricted area] without lawful authority to do so." § 1752(a)(1), (c). Under this construction, the statute still reads

---

[2] At the hearing on November 21, 2023, the Court questioned the government about whether § 1752(a), as an "elevated misdemeanor" provision, requires proof of some level of knowledge that is greater than traditional misdemeanor charges. To be sure, this statute does not criminalize trespassing in general, but only within an area that is restricted for the reasons that establish federal jurisdiction over this offense. That need for a federal nexus does not provide a reason to read an enhanced *mens rea* requirement into the statute. *See United States v. Feola*, 420 U.S. 671, 676 n.9 (1975) ("[T]he existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute."); *see also United States v. Burwell*, 690 F.3d 500, 537 n.10 (D.C. Cir. 2012) (dissent, J. Kavanaugh) ("The presumption of *mens rea* does not generally apply . . . to jurisdictional-only elements" such as "federal status of property of the federal affiliation of an individual.") (citing *Feola*, 420 U.S. at 684).

logically and maintains Congress' intent of providing broad protections for Secret Service protectees.

By contrast, there is nothing natural or logical about applying "knowingly" to subsection (c)(1)(B). *See United States v. Collazo*, 984 F.3d 1308, 1323 (9th Cir. 2021) ("[T]he word 'knowingly' does not necessarily apply to every word in 'a long statutory phrase, such that questions may reasonably arise about how far into the statute the modifier extends.'") (quoting *Rehaif*, 139 S. Ct. at 2196); *cf. Ruan v. United States*, 142 S. Ct. 2370, 2378–79 (2022) (applying knowingly to a statutory clause contained within the same clause of the same subsection of the statute).

Such a construction would defy Congress's clear intent, and there is no principled limitation on the proposed interpretation. Imposing the *mens rea* term of "knowingly" on the entire definitional provision in subsection (c) invites more questions than it answers. Subsection (c)(2), for example, makes additional references to other sections of the U.S. Code that are carried into the definitional subsection by reference. *See* § 1752(c)(2) ("the term 'other person protected by the Secret Service' means any person whom the United States Secret Service is authorized to protect under section 3056 of this title or by Presidential memorandum, when such person has not declined such protection"). By that logic, knowingly should also apply to those referenced sections, including knowledge that the person has not declined Secret Service protection, despite the grammatical unwieldiness of such a construction. Congress simply cannot have intended that result. *See Rehaif*, 139 S. Ct. at 2195 (Whether "a criminal statute requires the Government to prove that the defendant acted knowingly is a question of congressional intent.").

B. The "*Mens Rea*" Canon: Section 1752 poses "no snare for the unsuspecting."

It is true that, in general, American criminal law employs a presumption favoring *mens rea*

where Congress has not explicitly included a *mens rea* requirement. *See Staples v. United States*, 511 U.S. 600, 606 (1994). "The Supreme Court developed the presumption in favor of *mens rea* for one particular reason: to avoid criminalizing otherwise lawful conduct." *United States v. Burwell*, 690 F.3d 500, 505 (D.C. Cir. 2012) (en banc) (citing *Morissette v. United States*, 342 U.S. 246, 250 (1952)). Thus, Supreme Court "precedents 'can be fairly read as establishing, at least with regard to crimes having their origin in the common law, an interpretative presumption that *mens rea* is required.'" *Id.* (quoting *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 437 (1978)).

The D.C. Circuit has also "made clear [that] the presumption in favor of *mens rea* [is] triggered by the need to avoid imposing substantial penalties – including jail sentences – on innocent citizens who *had no idea* they were committing a crime." *United States v. Burwell*, 690 F.3d 500, 506–07 (D.C. Cir. 2012) (en banc). But as Justice Scalia observed, "[i]t is one thing to infer the common-law tradition of a *mens rea* requirement where Congress has not addressed the mental element of a crime. It is something else to expand a *mens rea* requirement that the statutory text has carefully limited." *Flores-Figueroa*, 556 U.S. at 658 (Scalia, J., concurring) (citing *Staples v. United States*, 511 U.S. 600, 605 (1994); *U.S. Gypsum Co.*, 438 U.S. at 437–38). "Moreover, when asked to infer *mens rea* requirements in other criminal statutes, . . . [the D.C. Circuit] and other [courts] have frequently found that certain offense elements do not require proof of an additional *mens rea*, so long as the offense as a whole carries a scienter requirement that separates innocent from criminal conduct." *Burwell*, 690 F.3d at 508 (collecting cases).

For example, in *United States v. Holland*, the D.C. Circuit concluded that a conviction for distribution of controlled substances within 1000 feet of a school under 21 U.S.C. § 841a does not require knowledge that the defendant was distributing controlled substances within 1000 feet of a

school. 810 F.2d 1215, 1222–23 (D.C. Cir. 1987). "Section 845a does not criminalize a broad range of apparently innocent conduct. Nor would it be appropriate to apply the rule of lenity here, where the application of it would 'undercut [the] unambiguous legislative design' of this section.'" *Id.* at 1223 (quoting *United States v. Falu*, 776 F.2d 46, 48–50 (2nd Cir. 1985)). "It is easily concluded here that Congress' heightened interest in protecting children from both the indirect and the direct perils of drug traffic amply supports its decision not to require a showing of *mens rea* of the proximity of a school." *Id.* There, as here, the government therefore needed to prove that the defendant was physically located within the area identified and defined by the statute, but the defendant's subjective knowledge of the definition of his location was not required.

The presumption in favor of *mens rea* does not apply here. *See Burwell*, 690 F.3d 500, 507. Congress *has* included a *mens rea* term in § 1752(a)(1), and has further included even more specific *mens rea* terms in Subsections (a)(2) ("and with intent to impede or disrupt the orderly conduct of Government business or official functions"), (a)(3) ("and with the intent to impede or disrupt the orderly conduct of Government business or official functions"), and (a)(5) ("and willfully operates an unmanned aircraft system with the intent to knowingly and willfully direct"). A defendant who enters an area he knows to be restricted while knowing that he lacks authority to be there has engaged in wrongful conduct regardless of whether he knows the area is restricted *because*, for example, a former First Lady or a "distinguished foreign visitor[ ] to the United States" is present. 18 U.S.C. § 3056(a)(3), (6). As written, each of the offenses defined by § 1752(a) already require both conduct and mental culpability that separates innocent conduct from wrongful conduct; "[i]t is no snare for the unsuspecting." *United States v. Feola*, 420 U.S. 671, 685 (1975) (assault of a federal officer under 18 U.S.C. § 111 does not require knowledge of the officer's status); *see also, e.g., United States v. Morgan*, 45 F.4th 192, 208 (D.C. Cir. 2022)

7

(transportation of a minor with the intent to engage in criminal sexual activity under 18 U.S.C. § 2423(a) does not require proof that the defendant knew that the minor was underage)[3]; *United States v. Chin*, 981 F.2d 1275, 1280 (D.C. Cir. 1992) (quoting *Liparota*, 471 U.S. 419, 426 (1985)) ("We have taken into account, in reaching our decision, that this is not an instance in which a broad interpretation of a statute threatens to criminalize 'apparently innocent conduct.'"); *Bryan v. United States*, 524 U.S. 184, 194 (1998) ("The danger of convicting individuals engaged in apparently innocent activity that motivated [the Court's] decisions in the tax cases and *Ratzlaff* [*v. United States*, 510 U.S. 135 (1994)] is not present . . . [where the factfinder] found that [the defendant] knew that his conduct was unlawful."); *United States v. Crowder*, 656 F.3d 870, 875 (9th Cir. 2011) (holding that the word "knowingly" in the Sex Offender Registration and Notification Act (SORNA), 18 U.S.C. § 2250(a)—which imposes criminal penalties on any person who "knowingly fails to register or update a registration as required by [SORNA]"—does not apply to the phrase "as required by [SORNA]" because a defendant would know failing to register was "not an innocent act").

To crystallize the takeaway here, a defendant who knowingly enters or remains in a restricted building or grounds without lawful authority does not do so "innocently," even if they do not know that a Secret Service protectee is present. *See* § 1752(a)(1). More so, a defendant who

---

[3] In *Morgan*, the D.C. Circuit ruled that, despite the statute providing a large enhancement and penalty for assaults against younger children, the statute's "knowingly" *mens rea* did not apply to the fact of the child's age. *Morgan*, 45 F.4th at 205. Observing that "there can be a "convincing reason to depart from the ordinary presumption in favor of scienter," the Circuit specifically pointed to the protection of vulnerable individuals, there, minor children, as such a convincing reason. *Id.* at 206–07 (internal citation omitted). The decision therefore provides an example of a statute meant to protect individuals who Congress has an interest in protecting, and applying heightened penalties to a defendant who acted in such a way that threatened those protected individuals, without requiring the defendant to know that the victim or potential victim involved was vulnerable or protected; that the protected individual was threatened is enough to merit a heightened penalty.

engages in disorderly or disruptive conduct in a restricted area, or obstructs the entrances to such an area, while intending to disrupt government business does not do so innocently, even if they are unaware of who is inside. *See, e.g.*, 18 U.S.C. § 1752(a)(2) and (3). Finally, violence against persons or property within a restricted building or grounds is never innocent, even if committed without knowledge that a Secret Service protectee is present. *See* 18 U.S.C. § 1752(a)(4). The bottom line is that wrongfulness of a defendant's conduct, for § 1752(a), never turns on whether the defendant was aware that a Secret Service protectee was or would be within the restricted perimeter.

Thus, this is not a case in which the *mens rea* canon suggests that the Court should set aside the natural grammatical reading of the statute in order to draw the critical line between innocent and wrongful conduct. *See X-Citement Video*, 513 U.S. at 68–69. Congress has already drawn that line, so the *knowledge* requirement need travel no farther down the statute to avoid ensnaring the innocent.

C. Statutory history and congressional intent confirm the government's reading of the statute.

As dictated by the Supreme Court, determining whether a criminal statute imputes a knowledge requirement is a question of congressional intent. *Rehaif*, 139 S. Ct. at 2195. Section 1752 was created by the Omnibus Crime Control Act of 1970, Pub. L. No. 91-644, 84 Stat. 1880, 1891–92 (1971). Enacted as part of a bill meant to address the "disturbingly high levels of assassination and political violence" in America, S. Rep. 91-1249, at 2 (1970), Section 1752 was intended to help "[en]sure that the President is fully protected at all times against the isolated deranged individual . . . [and to] protect the President from organized premeditated attempts on his life." S. Rep. 91-1252, at 6 (1970). Recognizing that "security is of paramount importance when the President is away from the White House," at which point he or she is "most vulnerable," and

9

that it had "become increasingly difficult to maintain the necessary level of security," Congress enacted § 1752. *Id.* at 6–7. The statute made it a crime to, among other things, "willfully and knowingly enter or remain in . . . any posted, cordoned off, or otherwise restricted area of a building or grounds where the President is or will be temporarily visiting, in violation of the regulations governing ingress or egress thereto." 84 Stat. at 1892. The statute delegated to the Secretary of the Treasury authority "to prescribe regulations governing ingress or egress . . . to posted, cordoned off, or otherwise restricted areas where the President is or will be temporarily visiting." *Id.*

Congress subsequently expanded § 1752's protections so that they applied to any "other person protected by the Secret Service." Pub. L. No. 97-308, 96 Stat. 1451, 1451 (1982). This change was meant to "extend to all persons protected by the United States Secret Service the same 'zone of protection' authority which presently exists for the protection of the President[.]" H.R. Rep. 97-451, at 1 (1982). Congress later eliminated the references to regulations, making it a crime "willfully and knowingly to enter or remain in any posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, 120 Stat. 192, 252 (2006).

Most recently, Congress amended § 1752 as part of the Federal Restricted Buildings and Grounds Improvement Act of 2011, Pub. L. No. 112-98, 126 Stat. 263 (2012). That amendment, which enacted § 1752 in its present form, was meant "to correct and simplify" the statute. H.R. Rep. No. 112-9, at 1 (2011). It also "clarifie[d] that the penalties in Section 1752 of title 18 apply to those who knowingly enter or remain in any restricted building or grounds without lawful authority to do so." *Id.* at 2. Section 1752 thus no longer requires a defendant to have acted "willfully."

10

Since it initially enacted § 1752, Congress has consistently expanded its protections, first by extending it to Secret Service protectees other than the President, then by eliminating the need for a defendant to violate regulations as an element of the crime, and most recently by eliminating the requirement that a defendant act willfully. Congress has thus made clear its intent that § 1752 apply broadly, maximizing the Secret Service's ability to protect the President, Vice President, their families, and other dignitaries.

Given this history, Congress has expressed a clear intent to expand the reach of § 1752 and its protections over time. Accordingly, there are significant and obvious reasons to believe that Congress did not intend to require a defendant to know why a particular area is restricted—for example, because "the President or other person protected by the Secret Service is or will be temporarily visiting" or because it is "so restricted in conjunction with an event designated as a special event of national significance." § 1752(c)(1)(B)–(C). The clear goal of the statute, as evidenced by the text and history of the statute, is to ensure the safety of Secret Service protectees. *See United States v. Caputo*, 201 F. Supp. 3d 65, 72 (D.D.C. 2016) (rejecting facial and as-applied First Amendment challenges to § 1752, in White-House-fence-jumping case, in part because of "the Government's *profound* interest in protecting the White House complex, the President, and the functionality of the executive branch.") (emphasis added). "As evidenced by the legislative history, the goal of Section 1752 is to provide the fullest protection possible for Secret Service protectees." *United States v. Puma*, 596 F. Supp. 3d 90, 114 (D.D.C. 2022); *cf. United States v. Holland*, 810 F.2d 1215, 1223 (D.C. Cir. 1987) ("Congress' heightened interest in protecting children from both the indirect and the direct perils of drug traffic amply supports its decision not to require a showing of *mens rea* of the proximity of a school."). A requirement that a defendant know, or be on notice of, a particular protectee's location in order to violate the statute is clearly

11

antithetical to that goal. *See United States v. Couy Griffin*, 21-CR-92, Doc. 110; *cf. United States v. McHugh*, 583 F. Supp. 3d 1, 31–32 (D.D.C. 2022) (opining that the defendant's theory that the Secret Service, not another law enforcement agency, must set up the restricted perimeter "would contravene the statute's manifest purpose: to ensure that federal law criminalizes (and thereby deters) misconduct that may threaten a Secret Service protectee").

Moreover, requiring that a defendant know *the reason* an area is restricted is difficult to square with Congress's elimination of the statute's requirement that the defendant act "willfully." That change was meant to "correct and simplify" the statute, and to "clarif[y] that the penalties in Section 1752 of title 18 apply to those who knowingly enter or remain in any restricted building or grounds without lawful authority to do so." H.R. Rep. No. 112-9, at 1–2. When it eliminated the statute's "willfully" requirement, Congress moved the language "any posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting" from § 1752(a)(1) to a separate definitional provision. *Compare* 18 U.S.C. § 1752(a)(1) (2011) *with* 18 U.S.C. § 1752(a)(1) (2023). Nothing in this statutory amendment suggests that Congress meant to require a defendant to know *why* an area is posted, cordoned off, or otherwise restricted. To the contrary, by eliminating the statute's requirement that a defendant act willfully and moving the relevant language to a separate statutory section, Congress made clear its intent to lower the bar for prosecutions under § 1752. *See United States v. Griffin*, 549 F. Supp. 3d 49, 56 (D.D.C. 2021) ("But Congress did lower the *mens rea* requirement, striking the requirement that a defendant act 'willfully.'").

D. The *Bingert* decision remains an outlier.

A number of courts within this district have addressed the legal question presented here.[4] *United States v. Gunby*, 1:21-cr-626 (PLF), 11/13/23 Final Jury Instructions, Doc. 114 at 30-31[5]; *United States v. Samsel*, Case No. 21-cr-537 (JMC); 11/2/23 Minute Order (rejecting the defendant's construction of § 1752 in the legal instructions for the bench trial, holding that "[t]he Court has not adopted Defendants' proposed edits to the 18 U.S.C. § 1752 charges concerning defendant's knowledge of the Vice President's presence at the Capitol on January 6, 2021, agreeing with the reasoning articulated by the Government at the hearing on this issue."); *United States v. Eicher*, Case No. 22-cr-38 (BAH), Doc. 83 at 1 (jury notes); 6/14/23 Trial Tr. 8:7-22;[6] *United States v. Vo*, Case No. 21-cr-509 (TSC), 9/22/23 Trial Tr. 1199:22-1200:13 (rejecting the defendant's construction of §1752 in the jury instructions); *United States v. Griffin*, 21-CR-92 (TNM)[7]; *United States v. Bingert*, Case No. 21-cr-91 (RCL), Note to Counsel, Doc. 163; *United*

---

[4] This issue has been briefed in the D.C. Circuit and is scheduled for oral argument on December 4, 2023. *United States v. Griffin*, No. 22-3042.

[5] In *Gunby*, the defendant raised this issue at a pretrial conference, and Judge Friedman declined to provide the defendant's requested instruction when instructing the jury. At the time of this submission, the government does not have a transcript of the pretrial conference.

[6] In response to a jury question, Judge Howell instructed the jury that it did not need to find that the defendant *knew* that the Vice President was visiting for the purposes of the § 1752 offenses.

[7] *United States v. Griffin*, 21-CR-92 (TNM), Tr. of Bench Trial, Doc. 106, 330–32 ("The defense's second argument is that Mr. Griffin cannot be convicted under 1752(a) unless the government shows he knew a Secret Service protectee was or would be temporarily visiting in the restricted building or grounds at issue. I disagree. The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute. That's according to *Liparota v. United States*, 471 U.S. 419, page 424, from 1985. So determining the mental state required for commission of a federal crime requires 'construction of the statute and inference of the intent of Congress.' From *Staples v. United States*, 511 U.S. 600, page 605, from 1994. Here, the text of 1752, which is the best evidence of Congress's intent regarding the *mens rea*, forecloses the defendant's argument. I find that Congress specifically included a *mens rea* requirement in those portions of the statute laying out the elements of the offense, while excluding that *mens rea* requirement in the definitional provision. A defendant must

While none of these cases are binding on this Court, the *Bingert* decision appears to be an outlier, and respectfully, without substantial analysis.[8]

### E. The statute's purpose supports the government's reading.

The overarching purpose of Section 1752 is to ensure that the Secret Service are able to adequately protect buildings and areas where Secret Service protectees are likely to be. To find that the word "knowingly" is incorporated by inference into subsection (c) would mean that a person would have to know that the area was restricted either because a Secret Service protectee was present within, or "in conjunction with an event designated as a special event of national significance." Such a reading would undermine to purpose of the statute: the natural consequence of this reading would be to force the Secret Service to announce exactly which protected individual would be found where, and when, if the Secret Service were to take advantage of the statute. This would expose the protected individual to more risk, not less, and would restrict the ability of the Secret Service to adequately ensure the safety of their protectees. The heightened penalties of Section 1752 compared to general trespass statute reflect not a defendant's heightened and specific

---

act knowingly in committing the offense conduct identified in Subsections (a)(1) through (a)(5). Each of those subsections begins with the word 'knowingly.' By contrast, that limitation appears nowhere in the definitional provision of (c)(1).[. . .] In sum, the text of the statute makes clear that Congress did not intend for the scienter requirement to apply to 1752's definitional provisions. And I should also say, it doesn't make a lot of sense to me that the government would have to prove somebody knew that a specific dignitary was there. I can't imagine that a provision that is looking to protect Secret Service protectees would require the Secret Service to somehow be telling people and proving that people knew which protectee was in the restricted area at what time.").

[8] The government is aware that Judge Nichols, in a bench trial, intends to enter final bench instructions that will require the government to prove that "the defendant knew that the Vice President or the Vice President's immediate family was or would be temporarily visiting the area" in order to succeed on a §§ 1752(a)(1) and 1752(a)(2). *United States v. Elizalde*, Case No. 23-cr-170 (CJN), 11/29/23 Supplement re: Notice (ECF 35) at 2. However, at the time of filing this memo, that decision has not been made final and Judge Nichols has not yet provided analysis supporting that decision.

14

*mens rea*, but the heightened and specific risks that the Secret Service protectees are exposed to on a daily basis.

    F. <u>The rule of lenity does not apply here.</u>

Finally, at oral argument, this Court asked and defense counsel argued that if this is a close case, then the rule of lenity counsels that any ambiguity should be resolved in favor of Groseclose. But the Supreme "Court has held that 'the rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a *grievous* ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended.'" *Maracich v. Spears*, 570 U.S. 48, 76 (2013) (emphasis added) (quoting *Barber v. Thomas*, 560 U.S. 474, 488 (2010)). "Only where 'the language or history of [the statute] is uncertain' after looking to 'the particular statutory language, . . . the design of the statute as a whole and to its object and policy,' does the rule of lenity serve to give further guidance." *Id.* (quoting *Crandon v. United States*, 494 U.S. 152, 158 (1990)). "The rule [of lenity] comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." *Id.* (quoting *Callanan v. United States*, 364 U.S. 587, 596 (1961)).

Here, after considering the text, structure, purpose, Congressional intent, and statutory history, there is no ambiguity as to what the statute means, and there certainly is no *grievous* ambiguity. The rule of lenity simply does not apply. *Cf. United States v. Holland*, 810 F.2d 1215, 1223 (D.C. Cir. 1987) ("Nor would it be appropriate to apply the rule of lenity here, where the application of it would 'undercut [the] unambiguous legislative design' of this section.'").

## Conclusion

The text, structure, history, and purpose of the statute all support the conclusion that the *mens rea* element of § 1752 requires the government to prove that the defendant was generally

aware he was within a restricted area but does not require the government to prove that the defendant knew why, specifically, the area was so restricted. Such a reading is consistent with the vast majority of courts in this district, and should be adopted by this Court.

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

By:   */s/ Michael J. Romano*
        Michael J. Romano
        IL Bar No. 6293658
        Deputy Chief, Capitol Siege Section

        */s/ Anthony W. Mariano*
        Anthony W. Mariano
        MA Bar No. 688559
        Trial Attorney / Detailee
        Capitol Siege Section

        */s/ Carolyn J. Jackson*
        Carolyn J. Jackson
        D.C. Bar No. 1644971
        Assistant United States Attorney
        Capitol Siege Section