UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 1:21-cr-00311-CRC |
| v. | : | |
| | : | |
| JEREMY DANIEL GROSECLOSE, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S
### MOTION TO VACATE ORDER REGARDING RAISED FUNDS

Following his conviction for participating in the riot at the United States Capitol on January 6, 2021, this Court ordered the defendant, Jeremy Daniel Groseclose, not to dissipate funds that were raised through an appeal on his behalf. The defendant raises two arguments, neither of which have merit.

First, though he did not develop this point at length, the defendant suggests that the Court lacked authority to direct him not to spend the money from his fundraising appeal. ECF No. 91 ¶¶ 2, 14. But criminal defendants are not entitled to profit from their crimes. Efforts to do so have been common in cases arising out of the riot on January 6, 2021. And, where defendants have profited off their crimes at the Capitol, courts have imposed fines to recover some or all of that money. *See*, *e.g.*, *United States v. Stedman*, 1:21-cr-383 (BAH), 9/8/2023 Sent. Tr. at 96 (fine of $20,000 based on fundraising); *United States v. Strand*, 1:21-cr-85 (CRC), Sent. Tr. 6/1/2023 at 39-42, 86 (fine of $10,000 based on fundraising); *United States v. DeGrave*, 1:21-cr-88-2 (DLF), 5/10/2023 Sent. Tr. at 17-19, 87 (fine of $25,000 based on fundraising). The Court is empowered to impose, as a condition of the defendant's continued release pending sentencing, that he "satisfy any other condition that is reasonably necessary to assure the appearance of the person as required and to ensure the safety of any other person and the community." 18 U.S.C. §§ 3143(a)(1),

3142(c)(1)(B)(xiv). A requirement that he not dissipate funds is certainly appropriate as a condition of his continued release, particularly where a fine or order of restitution may be imposed. *Cf. United States v. Boyd*, 1991 U.S. App. LEXIS 12752 at *2 (4th Cir. 1991) (affirming revocation of probation upon finding that defendant "willfully dissipated his assets to avoid payment of fines and restitution"); *United States v. Boutros*, 2019 U.S. Dist. LEXIS 218112, at *16-18 and n.1 (revoking pretrial release based, in part, on financial transactions in violation of release conditions and noting (at footnote 1) that the release conditions were motivated in part by a concern that the defendant would dissipate funds). In sum, the Court is empowered to order the defendant not to dissipate his funds here.

Second, and primarily, the defendant argues that the Court lacks authority over his partner, who is not a party to this case. The argument is primarily a factual one: the defendant claims that his partner raised the funds at issue, so the money belongs to her, not to him. As the Court will see, this argument is a sham. The defendant and his partner set up the fundraiser via a GiveSendGo account in her name, on his behalf, because they knew that if the account was in the defendant's name, the Court would order a fine, at sentencing, and they would lose the money they raised. The money in the defendant's fundraising account is the defendant's, despite this transparent attempt to structure it otherwise. The campaign itself is titled "Jeremy's J6 Survival Fund." And the initial version of the fundraising post makes clear that the defendant wanted the money to hire an attorney. At the time it was posted, it contained the following sentence: "The ultimate goal would be for us to raise enough money to get proper representation." (ECF No. 72 at 6.)

On November 1, 2023, attorney William Shipley filed a motion to substitute himself as counsel for the defendant in this matter. (ECF No. 72.) In his motion, Mr. Shipley wrote that the defendant "has only recently been placed in a position to have an opportunity to seek out counsel

of his choice." *Id.* at 3. As the government noted in its opposition to Mr. Shipley's motion, the defendant was in this position due to a fundraiser created on his behalf on October 31, 2023—the very day Mr. Shipley first spoke with the defendant. (ECF No. 73 at 5-6.)[1] The fundraising appeal generated about $35,000 in three days. *Id.*

The circumstances of this GiveSendGo fundraising appeal makes it clear that it was the defendant's appeal, and he owns the money that has been raised. The conversation about this appeal began at 10:34 a.m. on October 31, 2023 via X (formerly Twitter). An X user ("the author"), who tweets about the criminal cases arising out of January 6, 2021, and who has more than 10,000 followers, tweeted a message that—as context made clear—was about the defendant. She wrote: "Yet another J6er has reached out to me and he is mentally, emotionally, and financially spent. My heart is breaking for these HUMAN BEINGS! WHO is going to help them?!? How many MORE will kill themselves waiting for help that never comes. I am EXTREMELY WORRIED ABOUT THIS MAN!!!" At approximately 11:24 a.m., another Twitter user asked the author, "does he have a fund we can donate too [sic]?" The author replied, "Setting one up[.]" At approximately 3:25 p.m., the author posted a new tweet with a link to the defendant's fundraising appeal; she also replied to several people who responded to her original, 10:34 a.m. tweet by sending them the link to the defendant's fundraising appeal.

Within the responses to the author's original tweet, one conversation is especially telling. At approximately 12:51 p.m. on October 31, another X user asked the author, "Does he have a GiveSendDo [sic], or any fundraising?" At approximately 12:53 p.m., the author replied, "His wife is setting one up, **he was advised not to put his name on it because the courts are confiscating**

---

[1] Mr. Shipley's motion says that he first spoke with the defendant on October 21, 2023, but he later emailed government and defense counsel to correct this error.

**their funds**" (emphasis added). At approximately 1:00 p.m., the first user replied, "Wise choice, but it is insane that that happens!! It is like watching the old Soviet Union tactics all over again. When it is set up, tag me or send it to me [XXXX], I'll do my best to help get it out there." The author shared the fundraiser with this user later that afternoon.

At approximately 9:50 a.m. on November 1, 2023—less than 24 hours after the defendant's appeal went live, and the same day that Mr. Shipley moved to substitute himself as counsel—the author tweeted that "The outpouring of love, prayers, and generosity has been nothing short of AMAZING! PLEASE share this J6er's fundraiser. He and his wife are so thankful & appreciative. This has given them HOPE, and without hope, the J6ers don't stand a chance." This post contained, again, a link to the defendant's fundraiser. On November 2, the defendant responded to the author's November 1 tweet, writing "Thank you everyone so much. A big special thanks to [XXXX] for all you've done and continue to do for us all."

Context makes clear that the defendant was aware that following his conviction, the Court would try to reclaim these funds, so he and his partner set the fundraiser up in his partner's name to avoid a fine. This was a fraud upon the Court.[2] Now, the defendant argues—as the author telegraphed that he would—that the money isn't his, and that he has "no legal ability to control how [his partner] spends the proceeds." ECF No. 91 ¶ 13. But the defendant merely points to the

---

[2] Notably, following this Court's order, the fundraising has changed to recast its purpose. As noted in the screenshot in the defense's filing, the first sentence of the campaign read, at the time of trial, "This is a fund I have put together **for my husband Jeremy Groseclose**" (emphases added). When viewed on December 5, 2023, the first sentence was edited to expand its purpose, "This is a fund I have put together for my husband Jeremy Groseclose and our family." At the time of trial, the fundraiser stated, "The ultimate goal would be for us to raise enough money to get proper representation." Now—without any notation of the change—that line is omitted and new text has been added, which states, "these funds will help me survive now as a single mother trying to keep our family together." By the time trial was over, the vast majority of the current total ($39,765) had been raised—prior to these after-the-fact revisions to the website.

façade he set up, and he provides no other facts to support his argument. And while he acknowledges that he and his partner are not married, they might have joint accounts, he might have access to accounts in her name, and she might be willing to accept his direction on how to spend this fundraiser money. The defendant's motion, of course, makes no effort to engage with any of these possibilities. He provides no information about who has access to the GiveSendGo account, how funds are withdrawn from GiveSendGo, where the money goes once withdrawn, who has control over the account that receives disbursements from GiveSendGo, how much fundraiser money already has been spent, or how such money has been spent. In short, the defendant provides no factual support for his argument, but instead invites the Court to throw up its hands and admit defeat at the hands of his poorly conceived, and fairly transparent, scheme. The Court is, of course, fully empowered to recognize the sham nature of this arrangement, to treat the money as the defendant's, and to maintain the current conditions. *Cf. United States v. Lippitt*, 180 F.3d 873, 875 (7th Cir. 1999) (finding that a real estate transaction was a sham intended solely to avoid paying a fine, and ordering the defendant to recover the property and make it available as security).

## CONCLUSION

The Court should deny Groseclose's motion to change this condition of his continued release pending sentencing.

Respectfully submitted,
MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:  /s/ *Michael J. Romano*
Michael J. Romano
IL Bar No. 6293658
Deputy Chief, Capitol Siege Section

/s/ *Anthony W. Mariano*
Anthony W. Mariano
MA Bar No. 688559
Trial Attorney / Detailee
Capitol Siege Section

/s/ *Carolyn J. Jackson*
Carolyn J. Jackson
D.C. Bar No. 1644971
Assistant United States Attorney
Capitol Siege Section