UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) ) ) **v.** ) ) **JEREMY DANIEL GROSECLOSE.,** ) ) **Defendant** ) ) | Case No. 21-cr-00311-CRC |

**DEFENDANT JEREMY GROSECLOSE'S SENTENCING STATEMENT**

                William L. Shipley, Jr., Esq.
                PO Box 745
                Kailua, Hawaii 96734
                Tel: (808) 228-1341
                Email: 808Shipleylaw@gmail.com

                *Attorney for Defendant*

I. **Introduction**

Jeremy Groseclose comes before this Court for sentencing having been convicted after a bench trial of one felony, a violation of 18 U.S.C. Sec. 231(a)(3), and two "B" misdemeanors.

Yet the Probation Officer has prepared a Presentence Report and Recommendation that relies upon the existence of two felonies, and with the guideline calculation that is based upon the uncharged and unproven felony – an attempted violation of 18 U.S.C. Sec. 111(b).  Not only was the conduct unproven, the Government stepped back from the allegations at the conclusion of its case and in closing arguments.

A simple guideline calculation in this case for the single felony alleged and proven by the Government results in a Guideline Range of 6-12 months. The "B" misdemeanors are not considered under the Guidelines

Yet Mr. Groseclose comes into this Court having to argue against a guideline calculation from the Probation Officer that sets the guideline range as 46-57 months – a nearly 8 fold increase from the bottom of the guideline range on the count of conviction, and a 5 fold increase from the top of that range.

The sole cause for it all is the Probation Officer's insistence on characterizing Mr. Groseclose's conduct with respect to a chair as an "attempted" assault on a law enforcement officer -- a crime the Government neither charged nor sought to prove.

The Probation Officer did not observe the trial testimony.  The Probation Officer acknowledges reviewing the Criminal Complaint Affidavit, the Superseding Indictment, EDF No. 104 (transcript), and receiving information

from the Government as the basis for crafting the Offense Conduct section of the PSR. The Probation Officer did not solicit any information from the Defense, and the final PSR makes the same claims in the Offense Conduct section as did the draft PSR.

The Defense made informal objections to the draft PSR with regard to the issue of the chair, as well as with regard to the guideline calculation using U.S.S.G Sec. 2A2.2 after applying the cross-reference under Sec. 2A2.4(c). The objections are not addressed by the final PSR.

## II.  The Offense Conduct.

Mr. Groseclose does not intend to belabor any particular issue with regard to the nature of his conduct on January 6, 2021. This Court was the trier-of-fact in a bench trial; this Court heard and considered all the evidence; and this Court rendered its verdicts based on the factual determinations it made.

But the determination in the PSR that Mr. Groseclose's conduct – uncharged – included an attempted assault on the Officers goes beyond the verdicts rendered by this Court.

In rendering its verdicts the Court made clear that it viewed Mr. Groseclose's actions throughout the sequence of events involving the attempts to close the security door as deliberate and purposeful. But the Court's comments were all made within the context of the question of Mr. Groseclose's intent to violate Sec. 231(a)(3), i.e., that he was intending to obstruct, interfere, and impede the Officers who were engaged in the performance of their duties.

In its closing argument, the Government acknowledged that the Exh. 109 was subject to differing interpretations:

> "The defendant moments later put his hand on the trash can to steady it under the door. He banged the underside of the door. Both of these come from Exhibit 109. He picked up a chair. As Officer Mencia has described, in his view, *it looks like that same hand which steadied the trash can lifted up the chair*, and the legs squared off and stepped forward in *what looked like throwing the chair.*
>
> We understand the defense disputes this. The government submits that the best interpretation of this evidence is that *two people had their hands on the chair simultaneously* so it doesn't fly forward in the way that the defendant was trying to send it forward. *But ultimately the Court doesn't need to resolve that issue* because the Court can still find, for purposes of civil disorder, that the defendant interfered with the police when he was steadying that trash can, when he was helping to raise the door, and when he was lending his strength to the mob, including as the door opened. And he pointed the way forward indicating for other people to pursue the fleeing police officers."

ECF No. 103, p. 11-12.

As the Court knows, none of the officers involved could recall Mr. Groseclose or anything done by Mr. Groseclose with respect to the chair. The entirety of the record evidence on this issue is what is reflected in Exh. 109 – and what is not established by that video.

The Government has never referred to the chair in connection with an "assault" or "attempted assault."  The premise for basing the sentencing calculation under Sec. 2A2.2 via the cross-reference in Sec. 2A2.4(c)(1) comes down to an interpretation of a snippet of video trying to infer Mr. Groseclose's "intent to commit bodily injury" from one brief sequence of action beginning with the chair being sent in Mr. Groseclose's direction by law enforcement which he stops from hitting him with his hand and his subsequent response.

The closest the Court comes to accepting the Government's allegation in its own words was as follows:

> "Nonetheless, the frame-by-frame images show Mr. Groseclose moving his body weight and hand forward as he ***pushes the chair back towards the officers.***"

"Pushes the chair back towards the officers" does not translate into an "attempted assault" of the officers with the chair any more than the officers sending the chair under the door in the direction of the rioters constituted an attempted assault by the officers on the rioters.

The evidence does not preponderate with regard to Mr. Groseclose's "intent" to assault the officers no matter what the Government thinks the video shows with respect to his physical acts. If it did, the Government would have charged Mr. Groseclose with that crime. Its failure to do so is the strongest indication of the Government's own lack of conviction on this evidence.

### III.   Guideline Calculation:

Count One:  18 U.S.C. Sec. 231(a)(3) – Civil Disorder

The applicable Sentencing Guideline provision is Sec. 2A2.4.

| | |
|---|---|
| Base Offense Level: | 10 |
| Specific Offense Characteristics | N/A |
| Adjusted and Total Offense Level | 10 |

The PSR shows that Mr. Groseclose has suffered no criminal convictions that result in Criminal History Points, placing him in Criminal History Category I.

<u>With a Total Offense Level of 10, and a Criminal History Category of I, the recommended ***Guideline Range is 6-12 months***</u>.

The Guideline Range is in Zone B of the Sentencing Table, therefore Mr. Groseclose is eligible for a sentence of probation with conditions as set forth in U.S.S.G. Sec. 5B1.1(a)(2).

Counts 5 and 6:  40 U.S.C. Sec. 5104(e)(2)(D) and (G) – "B" misdemeanors not covered by the Guidelines.  Maximum sentence up to 6 months.

While Mr. Groseclose has no criminal history points as determined by the United States Probation Officer in the Presentence Report, it would be disingenuous to suggest that Mr. Groseclose has led a "law abiding" life.  The PSR reflects numerous encounters with law enforcement both as a juvenile and throughout most of this adult life.  But for purposes of establishing his criminal history category, none of the encounters qualifies under the Sentencing Guidelines for purposes of accumulating "points" in his criminal history score.

IV. **The Sec. 3553(a) Factors**

    A. <u>Offense Conduct and Personal History and Characteristics of the Defendant</u>.

Pursuant to 18 U.S.C. § 3553(a), the numerous factors must be taken into account by the Court in formulating an appropriate sentence in this case.

The facts of this case, including the facts of the offense and factual circumstances pertinent to Mr. Groseclose's background and personal characteristics, should inform this Court with respect to the factors be considered pursuant to Sec. 3553(a):

    a.    <u>The Nature and Circumstances of the Offense</u>.

As many Judges in this District have recognized after studying the events of January 6 in great detail, the crowd at the Capitol that day can be categorized as having three primary constituent parts:

1) a relatively small group of individuals who came to the Capitol for the purpose and with the intent to engage in violence to disrupt the congressional certification of the 2020 Electoral Vote.

2) a larger number of protesters who intended to protest in a loud and raucous manner as a manifestation of their unhappiness and distrust with the reported outcome of the 2020 Presidential election -- but with no predetermined intention to engage in violent behavior towards law enforcement or any other individuals.  Some substantial number of these individuals were drawn into committing acts of violence once on the Capitol grounds or inside the Capitol itself directed towards law enforcement; and

3) an even larger group who remained as spectators to what developed into a riot by members of the first two groups but had intermittent contact with law enforcement at various times during the course of the day.

The facts applicable to Mr. Groseclose's conduct on January 6, 2021, place him in the third group, notwithstanding his brief encounters with law enforcement during the day.  Mr. Groseclose came to Washington D.C. to

attend the "Stop the Steal" rally on the Ellipse, and then joined with the crowd at the urging of speakers to travel to the Capitol – arriving at approximately 1:45 pm -- to voice his frustration and unhappiness with the electoral processes and outcome.

Not too long after arriving Mr. Groseclose moved along with the crowd from the lower West Plaza to the Upper Terrace on the west side of the Capitol building.  Mr. Groseclose entered the Capitol through a broken window at the Senate Wing doors at 2:24 pm – after dozens if not hundreds of others had done the same before him after 2:13 pm when the window and doors were first broken thereby giving the crowd outside this location an opening to enter the building.

Approximately five minutes after entering the building Mr. Groseclose is seen in the Cyrpt.  Thereafter he is seen in the hallway between the Crypt and the Capitol Visitors Center at a moment when Capitol Police were in the process of closing a security door to prevent the crowd in the building from coming into the Visitors Center which was being used by the Capitol Police for several purposes as they were organizing themselves to deal with the crowd inside the Capitol.  The sequence of events in this location was a focus of the trial and there is no need to repeat the evidence here.

Mr. Groseclose left the Visitors Center after approximately 10 minutes and made his way eventually to the Rotunda.  Along the way he entered the office of then House Minority Leader Kevin McCarthy, where he dwelled for approximately 6 minutes until being instructed by a Capitol Police Officer to leave the office, which he did.

    b.  <u>History and Personal Characteristics of Mr. Groseclose</u>.

  The PSR accurately captures Mr. Groseclose's biographical history. The seeds of a trouble-filled life are easy to see.

  Mr. Groseclose is the father of two small children and the difficult circumstances with regard to his youngest daughter is set forth in the PSR.

  Mr. Groseclose has made an informed decision to not dwell on these issues for purposes of his Sentencing Statement. The issues surrounding his family life are accurately set forth in the Presentence Report and, for him, it is enough that the Court is aware of them without them being a point of "advocacy" by Mr. Groseclose or his counsel on his behalf.

  As noted in the PSR, Mr. Groseclose is the primary care giver at home for his children while his wife is employed fulltime. This is an arrangement they have agreed upon because of the specialized needs of their family. A period of incarceration would significantly hinder the feasibility of their current sharing of parental responsibilities without there being an obvious solution to address the complications that will arise.

  In many ways, Mr. Groseclose finds himself at a cross-roads taking into consideration the absence of serious prior contacts with law enforcement but facing a serious felony offense here. The pattern of close "brushes with the law" during his adult life are at an end given his conviction in this case. But he is still a young man with a young family who relies upon him for support and protection.

  To the extent Mr. Groseclose can avail himself of substance abuse treatment programs that can be made available to him through the United

States Probation Office, having options in that regard would likely be something he would benefit from not just for himself but for his family as well.

## DEFENDANT'S SENTENCING RECOMMENDATION

Because of his extraordinary family responsibilities given the specific facts reflected in the PSR, Mr. Groseclose requests that this Court exercise the discretion afforded to it by U.S.S.G. Sec. 5B1.1(a)(2) for Guideline Ranges that are in Zone B of the Sentencing Table such as the 6-12 month range applicable here.

Based thereon, Mr. Groseclose submits that a sentence of 24 months probation, with 6 months served under "home confinement" as a condition of that Probation, is a sentence is sufficient to address all the Sec. 3553(a) factors that this Court must take into consideration.

Dated: September 26, 2024                    Respectfully Submitted,

                                                                                             /s/ William L. Shipley
                                                                                             William L. Shipley, Jr., Esq.
                                                                                             PO BOX 745
                                                                                             Kailua, Hawaii 96734
                                                                                             Tel: (808) 228-1341
                                                                                             Email: 808Shipleylaw@gmail.com

                                                                                             *Attorney for Defendant*